393 So.2d 688 (1981)
STATE of Louisiana
v.
Harvey FAURIA, Alvin Blouin and Bryan Blouin.
No. 80-K-1438.
Supreme Court of Louisiana.
January 26, 1981.
*689 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Leon Cannizzaro, Louise S. Korns, Asst. Dist. Attys., for plaintiff-relator.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendants-respondents.
DENNIS, Justice.
We granted the state's application for a writ of certiorari to review the trial judge's suppression of evidence obtained through warrantless arrests and seizures.
On April 5, 1980, New Orleans Police Officer Richard Dugas, while in the vicinity of Downman and Morrison Roads, observed the three defendants near a spool of cable lying on the ground. The officer observed that the men had a cable cutter and were transferring cut pieces of cable into the rear of a pickup truck. Recalling a complaint of a theft of copper cable made earlier by the Harbor Police, Officer Dugas approached the three men and held them until the Harbor Police, whom he had notified, arrived on the scene.
Dugas' report was relayed by radio to Harbor Policeman Rudolph Schultz who came to his assistance. We infer from the record that Schultz responded quickly; he was dispatched by radio and apparently proceeded directly to the location. When he arrived Schultz observed two pickup trucks, the spool of wire in the street, and pieces of cut wire in the back of one of the pickup trucks. Officer Dugas informed Schultz that he had observed the defendants cutting the wire. Schultz testified that he asked the three men what they were doing with the cable, and that one of the defendants stated that "he workedthat he chased somebody down and he picked the wire up." Schultz noticed that the wire and the spool were similar to the type of wire and spool that had been stolen from the wharves three days to a week before this incident.
Following these events, the three defendants were placed under arrest; the spool of wire, the cable cutter, and the loose wire were seized. Defendants were then charged with theft and receiving stolen goods valued at $4,000. Defendants moved to suppress the evidence and the trial court granted their motion after a hearing.
If a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the prosecution to justify the warrantless arrest or search. See State v. Franklin, 353 So.2d 1315 (La.1978). In the present case the prosecution elicited evidence that the arrests and seizures were without warrants. Accordingly, the state must show that the arrests were based on probable cause and that the evidence seized was justified under one of the recognized circumstances in which a search warrant is not required.
The initial detention of the defendants by Officer Dugas was authorized by Article 215.1 of the Code of Criminal Procedure. Section A of the article provides that "[a] law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions." Given the knowledge that Officer Dugas had concerning the thefts of copper cable from the wharves, when he observed the defendants cutting the cable and placing it in one of the pickup trucks parked nearby, he reasonably suspected that criminal activity might be afoot. Thus, an investigatory stop was justified. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *690 State v. Hunter, 375 So.2d 99, 101 (La.1979); 3 LaFave, Search and Seizure, § 9.3 at 69-70.
Although the Supreme Court has not clearly laid the ground rules for an investigatory stop, it is clear that the stop and inquiry must be "reasonably related in scope to the justification for their initiation," Terry v. Ohio, 392 U.S. at 29, 88 S.Ct. at 1868, 20 L.Ed.2d at 889, and "substantially less intrusive than arrests." Dunaway v. New York, 442 U.S. 200 at 210, 99 S.Ct. 2248 at 2255, 60 L.Ed.2d 824. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams, 407 U.S. 143 at 146, 92 S.Ct. 1921 at 1923, 32 L.Ed.2d 612.
This Court has said that it is the circumstances of each case which determine the right to stop, the right to frisk and the nature of the temporary detention. State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). Inherent in the officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation. White v. Morris, 345 So.2d 461 (La.1977).
The detention in the present case did not exceed the bounds of a reasonable investigatory stop. Essentially, the detaining officer effected a brief stop of suspicious individuals to maintain the status quo momentarily while obtaining more information about the copper wire they were removing and cutting into portable lengths. The suspects were not transported from the scene, and the police appear to have diligently pursued a means of investigation likely to resolve the matter expeditiously. See 3 LaFave, § 9.2 at 35-40. Under the circumstances, the detention was reasonable as to cause, method and duration.
After Harbor Policeman Schultz had arrived on the scene, had ascertained that the copper cable was of the type taken from the wharves, and had received an unsatisfactory response to his interrogation, the reasonable suspicion which had justified the initial detention ripened into probable cause. The facts and circumstances within Schultz's knowledge were sufficient to justify a man of average caution in the belief that the defendants had committed an offense. See State v. Morvant, 384 So.2d 765 (La.1980); State v. Zielman, 384 So.2d 359 (La.1980). Considering the circumstances and the unlikely story told by the defendants, it was more probable than not that the defendants' activity consisted of criminal behavior. See State v. Thomas, 349 So.2d 270, 272 (La.1977).
Having determined that probable cause to arrest existed, we conclude that the seizure of the evidence was lawful as having occurred incidental to the arrests. When a person is lawfully arrested, the police have a right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. This right to search and seize without a search warrant extends to things under the accused's immediate control and to an extent depending on the circumstances of the case, to the place where he is arrested. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Since the evidence seized in the present case consisted of fruits of or implements used to commit the crime, and consisted of things under the accuseds' immediate control, the officers were entitled to seize these items of evidence as an incident to the arrest of the defendants.
Accordingly, the judgment of the trial court granting the defendants' motion to suppress is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.